[No. C055700. Third Dist. Mar. 9, 2009.]

CALIFORNIA SCHOOL BOARDS ASSOCIATION et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Appellants;
DEPARTMENT OF FINANCE, Intervener and Appellant.

1184

1186

**COUNSEL**

Olson, Hagel & Fishburn, Deborah B. Caplan and N. Eugene Hill for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Christopher E. Krueger, Assistant Attorney General, Jonathan K. Renner, Steven M. Gevercer and Ross C. Moody, Deputy Attorneys General, for Defendants and Appellants.

Camille Shelton and Katherine A. Tokarski for Intervener and Appellant.

**OPINION**

**NICHOLSON, Acting P. J.**—The Legislature recently amended the law with respect to reimbursement to local governments for costs imposed as a result of ballot measures. The amended statute provides that the state need not provide reimbursement if "[t]he statute or executive order imposes duties that are necessary to implement, reasonably within the scope of, or expressly included in, a ballot measure approved by the voters in a statewide or local election. . . ." (Gov. Code, § 17556, subd. (f).) The Legislature also directed the Commission on State Mandates to set aside or reconsider specific test claims decisions that were issued before the amendment of the statute.

In this case, we must determine whether the Legislature's direction to the commission to redecide cases that were already final violated the separation of powers doctrine. We conclude that such direction exceeds the Legislature's power.

We also must determine whether the amended statute is consistent with article XIII B, section 6 of the California Constitution, which requires the state to reimburse local governments for certain costs imposed on the local governments by the Legislature and state agencies. We conclude that, to the extent that the amended statute provides that the state need not reimburse local governments for imposing duties that are expressly included in or necessary to implement a ballot measure, the statute is consistent with article XIII B, section 6. However, any duty not expressly included in or necessary

to implement the ballot measure gives rise to a reimbursable state mandate, even if the duty is reasonably within the scope of the ballot measure.

## THE PARTIES

The appellants and cross-respondents include the State of California, Department of Finance, Office of State Controller, and Commission on State Mandates. Except for the Commission on State Mandates, these parties filed a joint brief. We refer to them as the State. The Commission on State Mandates filed its own brief, and we refer to it simply as the Commission.

The respondents and cross-appellants include two associations (California School Boards Association (CSBA) and Education Legal Alliance (ELA)) and four local government entities (County of Fresno, City of Newport Beach, Sweetwater Union High School District, and County of Los Angeles). Because the respondents and cross-appellants are represented by the same counsel and make the same arguments, we will refer to the respondents and cross-appellants collectively using the acronym for the first named party, CSBA.

## BACKGROUND

### A. *Law and Procedure Relating to Mandates*

In 1978, the voters of California passed Proposition 13 to limit the power of state and local governments to increase taxes. The next year, the voters passed Proposition 4, called the "Spirit of 13" to limit growth in governmental spending. (*San Francisco Taxpayers Assn. v. Board of Supervisors* (1992) 2 Cal.4th 571, 574 [7 Cal.Rptr.2d 245, 828 P.2d 147].) Proposition 4 imposed government spending limits and required the state to reimburse local governments for the costs of complying with state-imposed programs.[1] (Cal. Const., art. XIII B, § 6 (hereafter, article XIII B, section 6); *County of Sonoma v. Commission on State Mandates* (2000) 84 Cal.App.4th 1264, 1282 [101 Cal.Rptr.2d 784].)

Subdivision (a) of article XIII B, section 6 provides: "Whenever the Legislature or any state agency mandates a new program or higher level of service on any local government, the State shall provide a subvention of funds to reimburse that local government for the costs of the program or increased level of service . . . ." Section 6 grants three exceptions to this

---

[1] We use the term "local governments" to refer, generally, to cities, counties, school districts, and other governmental entities that may be entitled to reimbursement for state-mandated costs.

general rule: (1) mandates requested by the local government, (2) legislation concerning crimes, and (3) mandates implemented prior to January 1, 1975. (Art. XIII B, § 6, subd. (a).)

The Legislature responded to Proposition 4 by creating the Commission to determine whether reimbursement was required for new state mandates. Local governments may file test claims, which the Commission adjudicates. (Stats. 1984, ch. 1459, § 1, p. 5113; Gov. Code, § 17500 et seq.; *County of Fresno v. State* (1991) 53 Cal.3d 482, 484 [280 Cal.Rptr. 92, 808 P.2d 235].) Decisions of the Commission are subject to judicial review under Code of Civil Procedure section 1094.5. (Gov. Code, § 17559, subd. (b).)

In the same legislation that created the Commission, the Legislature directed the Commission not to find local government costs reimbursable if, among other things, "[t]he statute or executive order imposed duties which were expressly included in a ballot measure approved by the voters in a statewide election" (ballot measure mandates). (Stats. 1984, ch. 1459, § 1, pp. 5113, 5118, 5119; Gov. Code, § 17556, former subd. (a)(3), (6).)

Applying article XIII B, section 6, and Government Code section 17556, the Commission resolved several test claims relevant to this action (and described below) involving ballot measure mandates. In those decisions, the Commission found costs reimbursable to the local governments because the legislation imposed costs exceeding the ballot measure mandates (not expressly included in a ballot measure).

In 2005, the Legislature made changes to Government Code section 17556 and directed the Commission to "set-aside" some of its test claim decisions and to "reconsider" other test claim decisions. (Legis. Counsel's Dig., Assem. Bill No. 138 (2005–2006 Reg. Sess.).)

Assembly Bill No. 138 (2005–2006 Reg. Sess.) changed the wording of Government Code section 17556, subdivision (f) with respect to ballot measure mandates. The 2005 provision stated that costs are not reimbursable if "[t]he statute or executive order imposes duties that *are necessary to implement, reasonably within the scope of, or* expressly included in a ballot measure approved by the voters in a statewide or local election. *This subdivision applies regardless of whether the statute or executive order was enacted or adopted before or after the date on which the ballot measure was*

*approved by the voters.*"[2] (Stats. 2005, ch. 72, § 7, italics added for new statutory language; see Gov. Code, § 17556, subdivision (f).)

Complying with the Legislature's requirement that it set aside or reconsider certain test claims, the Commission held new hearings on the test claims. It found that, pursuant to new laws and the amendment to Government Code section 17556, the costs that it had previously concluded were reimbursable costs were no longer reimbursable. Below we summarize each of those test claim decisions.

CSBA filed a petition for writ of mandate and complaint for injunctive and declaratory relief in the trial court. It asserted that the language of subdivision (f) of Government Code section 17556 conflicts with the requirements of article XIII B, section 6. CSBA also asserted that the legislation forcing the Commission to set aside or reconsider its prior decisions violated the separation of powers doctrine in the California Constitution.

---

[2] Government Code section 17556 states:

"The commission shall not find costs mandated by the state, as defined in Section 17514, in any claim submitted by a local agency or school district, if, after a hearing, the commission finds any one of the following:

"(a) The claim is submitted by a local agency or school district that requested legislative authority for that local agency or school district to implement the program specified in the statute, and that statute imposes costs upon that local agency or school district requesting the legislative authority. A resolution from the governing body or a letter from a delegated representative of the governing body of a local agency or school district that requests authorization for that local agency or school district to implement a given program shall constitute a request within the meaning of this subdivision.

"(b) The statute or executive order affirmed for the state a mandate that had been declared existing law or regulation by action of the courts.

"(c) The statute or executive order imposes a requirement that is mandated by a federal law or regulation and results in costs mandated by the federal government, unless the statute or executive order mandates costs that exceed the mandate in that federal law or regulation. This subdivision applies regardless of whether the federal law or regulation was enacted or adopted prior to or after the date on which the state statute or executive order was enacted or issued.

"(d) The local agency or school district has the authority to levy service charges, fees, or assessments sufficient to pay for the mandated program or increased level of service.

"(e) The statute, executive order, or an appropriation in a Budget Act or other bill provides for offsetting savings to local agencies or school districts that result in no net costs to the local agencies or school districts, or includes additional revenue that was specifically intended to fund the costs of the state mandate in an amount sufficient to fund the cost of the state mandate.

"(f) The statute or executive order imposes duties that are necessary to implement, reasonably within the scope of, or expressly included in, a ballot measure approved by the voters in a statewide or local election. This subdivision applies regardless of whether the statute or executive order was enacted or adopted before or after the date on which the ballot measure was approved by the voters.

"(g) The statute created a new crime or infraction, eliminated a crime or infraction, or changed the penalty for a crime or infraction, but only for that portion of the statute relating directly to the enforcement of the crime or infraction."

After a hearing, the trial court considered CSBA's arguments that subdivision (f) of Government Code section 17556 conflicts with article XIII B, section 6 because (1) ballot measure mandates fall within the category of mandates from "the Legislature or any state agency" (art. XIII B, § 6), and, (2) even if ballot measure mandates are not reimbursable pursuant to article XIII B, section 6, the statute's provision that mandates "necessary to implement [or] reasonably within the scope of . . . a ballot measure" (§ 17556, subd. (f)) is overly broad and therefore conflicts with article XIII B, section 6. The court concluded that the plain language of article XIII B, section 6 (mandates of "the Legislature or any state agency") does not include ballot measure mandates, meaning that the state is not required to reimburse local governments for mandates "expressly included" in ballot measures. However, the court determined that the new language of the statute relieving the state of reimbursement for mandates that are "necessary to implement [or] reasonably within the scope of . . . a ballot measure" violates article XIII B, section 6.

The trial court then considered CSBA's arguments that the legislation forcing the Commission to set aside or reconsider its ballot measure mandate decisions constituted a violation of the separation of powers doctrine. The court held that the legislation requiring the Commission to "set aside" its decisions was a violation of the separation of powers doctrine because it was an attempt to dictate to the Commission a finding that there is no reimbursable mandate and it directed the Commission to set aside a determination that was already final. On the other hand, the court held that the Legislature's direction to the Commission to "reconsider" other decisions was merely a procedural requirement with no retroactive application and therefore did not violate the separation of powers doctrine.

Based on these conclusions, the trial court granted the request for injunctive and declaratory relief and directed issuance of a writ of mandate. The court ordered the Commission to set aside the decisions that relied on Government Code section 17556, subdivision (f), as amended by Assembly Bill No. 138 (2005–2006 Reg. Sess.), in finding that costs were not reimbursable and to take no action in reliance on the amendment to that subdivision.

B. *Test Claims*

1. *Open Meetings Act (CSM 4257) and Brown Act Reform (CSM 4469) Test Claims*[3]

In 1988 and 2001, the Commission decided the *Open Meetings Act* and *Brown Act Reform* test claims, respectively. In each decision, the Commission

---

[3] The numbers in parentheses after the names of the test claims are those assigned to the test claims by the Commission.

found that the state must reimburse costs to the local governments for costs mandated by the legislation.

In the *Open Meetings Act* decision, the Commission considered Government Code provisions that required the legislative body of a local agency to post an agenda for its meetings before the meeting and prohibited action at the meeting on any item not previously posted. The provisions also required the legislative body to provide to members of the public the opportunity to address the legislative body on items of interest. The Commission concluded that these provisions mandated a higher level of service and increased costs. Therefore, the costs were reimbursable by the state.

In the *Brown Act Reform* decision, the Commission considered additional Government Code provisions concerning open meetings. Those provisions required the legislative body of a local agency to include in the posted agenda and to disclose in an open meeting a description of any items to be discussed in a closed session. The provisions also required the legislative body to reconvene in an open meeting to report the actions taken in the closed session and provide copies of documents from the closed session. The Commission concluded that the provisions mandated a higher level of service and increased costs, thereby necessitating reimbursement from the state.

In 2004, the voters passed Proposition 59. This constitutional amendment provided: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1).)

Assembly Bill No. 138 (2005–2006 Reg. Sess.) repealed the Government Code provisions that the Commission had found resulted in reimbursable costs mandated by the state. (Stats. 2005, ch. 72, §§ 11, 13.) It then reenacted the provisions verbatim, except that it added a subdivision to each provision stating, "This section is necessary to implement and reasonably within the scope of [Proposition 59]." (Stats. 2005, ch. 72, §§ 12, 14; Gov. Code, § 54954.2, subd. (c); see Gov. Code, § 54957.1, subd. (f).) Assembly Bill No. 138 directed the Commission to "set-aside all decisions, reconsiderations, and parameters and guidelines on the Open Meetings Act (CSM-4257) and Brown Act Reform (CSM-4469) test claims," retroactive to the effective date of Assembly Bill No. 138. (Stats. 2005, ch. 72, § 17(b).)

Complying with Assembly Bill No. 138's (2005–2006 Reg. Sess.) direction to set aside its decisions in the *Open Meetings Act* and *Brown Act Reform* test claims, the Commission set aside those decisions in September 2005, retroactive to the effective date of Assembly Bill No. 138. In doing so, the

Commission recognized Assembly Bill No. 138's finding that the Government Code provisions in question are necessary to implement and reasonably within the scope of Proposition 59. Beyond that recognition, however, the Commission independently came to the same conclusion, that the Government Code provisions are necessary to implement and reasonably within the scope of Proposition 59. Therefore, the *Open Meetings Act* and *Brown Act Reform* test claim decisions no longer result in costs reimbursable by the state.

The trial court determined that the provision in Assembly Bill No. 138 (2005–2006 Reg. Sess.) directing the Commission to set aside its decisions, reconsiderations, parameters, and guidelines in the *Open Meetings Act* and *Brown Act Reform* test claims violated the separation of powers doctrine. The court also determined that the language in Assembly Bill No. 138 stating that the Government Code provisions in question were necessary to implement and reasonably within the scope of Proposition 59 constituted an unlawful attempt, in violation of the separation of powers doctrine, to dictate to the Commission that it find no reimbursable costs as to those test claims. Based on these determinations, the court ordered issuance of a writ commanding the Commission to set aside its September 2005 decision with respect to the *Open Meetings Act* and *Brown Act Reform* test claims and to take no further action on those test claims inconsistent with the court's judgment.

### 2. *Mandate Reimbursement Process Test Claims (CSM 4204/4485 and 05-TC-05)*

In 1986, the Commission rendered a decision concluding that the process imposed on local governments for preparing and submitting a claim for reimbursable costs for state mandates was itself a state mandate for which costs were reimbursable to the local government. This test claim is referred to as *Mandate Reimbursement Process I*.

Assembly Bill No. 138 (2005–2006 Reg. Sess.) directed the Commission to reconsider its *Mandate Reimbursement Process I* test claim decision. It also directed that any changes in that decision were to be retroactive to July 1, 2006.[4] (Stats. 2005, ch. 72, § 17(a).)

Complying with Assembly Bill No. 138 (2005–2006 Reg. Sess.), the Commission reconsidered the *Mandate Reimbursement Process I* test claim.

---

[4] Assembly Bill No. 138 (2005–2006 Reg. Sess.) referred to this test claim using the wrong claim number. It directed the Commission to reconsider test claim No. CSM 4202, instead of the actual number, which is CSM 4204. The Commission concluded that this was merely an inconsequential error, as the clear legislative intent was for the Commission to reconsider CSM 4204. The parties do not mention this mistake in their briefs.

It concluded that the statutes concerning the mandate reimbursement process do not impose reimbursable costs because the statutes are necessary to implement and reasonably within the scope of Proposition 4.

In 2005, after the passage of Assembly Bill No. 138 (2005–2006 Reg. Sess.), a second test claim was filed with the Commission, asserting that legislative changes made since 1986 to the process of claiming reimbursable costs imposed further reimbursable costs on the local government. This test claim is referred to as *Mandate Reimbursement Process II.*

The Commission issued a decision in *Mandate Reimbursement Process II.* It concluded that, even though the statutes concerning the mandate reimbursement process imposed costs on the local government, the costs are not reimbursable because they are necessary to implement and reasonably within the scope of Proposition 4. However, the Commission did not make its own determination that the statutes are necessary to implement and reasonably within the scope of Proposition 4. Instead, the Commission simply cited the Legislature's declaration in Government Code section 17500 that the Legislature's intent in enacting the statutes was "to provide for the implementation of [Proposition 4]."

The trial court determined that the provision in Assembly Bill No. 138 (2005–2006 Reg. Sess.) directing the Commission to reconsider the *Mandate Reimbursement Process I* test claim decision did not violate the separation of powers doctrine because it was merely procedural, did not dictate a result, and had prospective effect only. As to both the *Mandate Reimbursement Process I* and *Mandate Reimbursement Process II* test claims, however, the court determined that the Commission's decisions must be set aside because the Commission applied Government Code section 17556, subdivision (f), which states that mandates that are necessary to implement or reasonably within the scope of a ballot measure are not reimbursable.

### 3. *School Accountability Report Cards Test Claim (97-TC-21)*

In 1988, the voters passed Proposition 98, which included a provision requiring school districts to issue school accountability report cards for each school in the district based on a model to be prepared by the State Superintendent of Public Instruction and adopted by the State Board of Education. The ballot measure required the model to include assessment of 13 school elements, although it did not limit the model to those elements.[5] (Ed. Code, former §§ 33126, 35256, as added by Prop. 98.)

Over the years, the Legislature has added numerous additional elements to the school accountability report card, such as information on salaries paid to

---

[5] Proposition 98 added Education Code former section 33126, subdivision (a), which stated:
"The model School Accountability Report Card shall include, but is not limited to, assessment of the following school conditions:

teachers and administrators, the degree to which pupils are prepared to enter the workforce, the number of instructional minutes offered in the school year, SAT scores, dropout rates, class sizes, teacher credentialing, and suspension and expulsion rates. (Ed. Code, § 33126.)

In 1998, the Commission rendered a decision stating that the 13 elements required by Proposition 98 to be included in the school accountability report cards are not reimbursable because they were expressly included in the ballot measure. As to the additional elements added by the Legislature, however, the Commission concluded that the legislation "impose[d] a new program or higher level of service upon local school districts and therefore are reimbursable under section 6, article XIII B of the California Constitution . . . ."

In 2004 and again in 2005, the Legislature directed the Commission to reconsider its decision in the *School Accountability Report Cards* test claim in light of new federal and state laws and state court decisions.[6] The legislation directed that the decision of the Commission be made retroactive to January 1, 2005. (Stats. 2004, ch. 895, § 18; Stats. 2005, ch. 677, § 53.) Upon reconsideration, the Commission concluded that, although the additional elements added to the school accountability report card were not expressly included in Proposition 98, they were reasonably within the scope of the ballot measure and, therefore, were not reimbursable. The Commission also stated two alternative grounds for denying the claim: (1) the additional school accountability report card elements added by the Legislature required only a minimal reallocation of resources and (2) the state essentially funds the school accountability report cards through Proposition 98's mandatory funding.

"(1) Student achievement in and progress toward meeting reading, writing, arithmetic and other academic goals.

"(2) Progress toward reducing drop-out rates.

"(3) Estimated expenditures per student, and types of services funded.

"(4) Progress toward reducing class sizes and teaching loads.

"(5) Any assignment of teachers outside their subject areas of competence.

"(6) Quality and currency of textbooks and other instructional materials.

"(7) The availability of qualified personnel to provide counseling and other student support services.

"(8) Availability of qualified substitute teachers.

"(9) Safety, cleanliness and adequacy of school facilities.

"(10) Adequacy of teacher evaluations and opportunities for professional improvement.

"(11) Classroom discipline and climate for learning.

"(12) Teacher and staff training, and curriculum improvement programs.

"(13) Quality of school instruction and leadership."

[6] The 2005 legislation directing reconsideration was necessary because the 2004 legislation had failed to include each of the Education Code amendments that the Legislature wanted the Commission to reconsider. (See Stats. 2005, ch. 677, § 53.)

The trial court held that, while the Legislature could validly direct reconsideration of the *School Accountability Report Cards* test claim, the new decision was improper because of its reliance on the amended language of Government Code section 17556, subdivision (f), excepting from the mandate requirement any duties that are necessary to implement or reasonably within the scope of ballot measures. The court directed the Commission to set aside its new decision and take no further action inconsistent with the court's ruling.

## DISCUSSION

## I

### *Separation of Powers*

We first consider the separation of powers arguments because, as will be seen, application of that constitutional limitation on the Legislature's power resolves the definitive issues concerning all but one of the test claim decisions. We conclude that the Legislature's direction to set aside or reconsider the decisions in the *Open Meetings Act* and *Brown Act Reform* test claims, the *Mandate Reimbursement Process I* test claim, and the *School Accountability Report Cards* test claim exceeded the Legislature's power and, therefore, the Commission's new decisions must be set aside. This does not affect the *Mandate Reimbursement Process II* test claim decision because it was not made pursuant to a legislative directive to set aside or reconsider a prior decision.

■ " 'From its inception, the California Constitution has contained an explicit provision embodying the separation of powers doctrine.' [Citation.] That Constitution apportions the powers of state government among the three branches familiar to all students of government in this country—legislative, executive, and judicial—and states that '[p]ersons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.' (Cal. Const., art. III, § 3.) Despite the apparent sharp division of powers among the governmental branches that the California Constitution provides, in reality the branches are mutually dependent in many respects, and the actions of one branch may significantly affect another branch. [Citation.] . . . [¶] 'At the same time, this doctrine unquestionably places limits upon the actions of each branch with respect to the other branches.' [Citation.] The Constitution 'vest[s] each branch with certain "core" [citation] or "essential" [citation] functions that may not be usurped by another branch.' [Citation.]" (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1102 [29 Cal.Rptr.3d 249, 112 P.3d 636].)

The State asserts that the trial court erred in finding that the Legislature violated the separation of powers doctrine when it directed the Commission to *set aside* its decisions in the *Open Meetings Act* and *Brown Act Reform* test claims. CSBA disagrees and additionally asserts that the Legislature violated the separation of powers doctrine when it directed the Commission to *reconsider* its decisions in the *School Accountability Report Cards* and *Mandate Reimbursement Process I* test claims. We conclude that the Legislature's direction to the Commission to set aside or reconsider final test claim decisions exceeded the Legislature's power.

In Assembly Bill No. 138 (2005–2006 Reg. Sess.) and corresponding legislation, the Legislature directed the Commission to set aside, in one instance, and reconsider, in the others, its decisions on the test claims at issue here. The trial court decided that the direction to reconsider test claims "is procedural only; it operates, or can be construed to operate prospectively only; it does not dictate the result; and, therefore, it does not violate the separation of powers doctrine." As for the Legislature's direction to the Commission to set aside a test claim decision, however, the trial court concluded that it violated the separation of powers doctrine because it did not merely require the Commission to reconsider them. This is the extent of the distinction identified by the trial court.

On appeal, the State urges us to find that the direction to set aside test claims did not violate the separation of powers doctrine because doing so was functionally the same as directing the Commission to reconsider the test claim decisions. On the other hand, CSBA, in its cross-appeal, argues that the Legislature violated the separation of powers as to the direction to reconsider test claim decisions as well as the direction to set aside a test claim decision. We conclude that CSBA is correct. The Legislature exceeded its power and therefore violated the separation of powers doctrine when it directed the Commission to set aside and reconsider test claim decisions. As a quasi-judicial decision maker, the Commission does its work independent of legislative oversight and is not subject to review by the Legislature. The Legislature had no power to direct the Commission to set aside or reconsider specific test claim decisions.

"In [Government Code] section 17500 et seq., the Legislature established the Commission as a quasi-judicial body to carry out a comprehensive administrative procedure for resolving claims for reimbursement of state-mandated local costs arising out of article XIII B, section 6 . . . of the California Constitution.

" 'The Legislature did so because the absence of a uniform procedure had resulted in inconsistent rulings on the existence of state mandates, unnecessary litigation, reimbursement delays, and apparently, resultant uncertainties in accommodating reimbursement requirements in the budgetary process. [Citation.]

" ' "It is apparent from the comprehensive nature of this legislative scheme, and from the Legislature's expressed intent, that the exclusive remedy for a claimed violation of [article XIII B,] section 6 lies in these procedures. The statutes create an administrative forum for resolution of state mandate claims, and establishes [*sic*] procedures which exist for the express purpose of avoiding multiple proceedings, judicial and administrative, addressing the same claim that a reimbursable state mandate has been created. . . . [¶] . . . In short, the Legislature has created what is clearly intended to be a comprehensive and exclusive procedure by which to implement and enforce [article XIII B,] section 6." [Citation.]

■ " 'Thus, the statutory scheme contemplates that the Commission, as a quasi-judicial body, has the sole and exclusive authority to adjudicate whether a state mandate exists.' [Citation.]" (*Redevelopment Agency v. Commission on State Mandates* (1996) 43 Cal.App.4th 1188, 1192–1193 [51 Cal.Rptr.2d 100], italics omitted.)

The Commission's authority to issue a final decision that solely and exclusively adjudicates a test claim is limited only by judicial review. "A claimant or the state may commence a proceeding in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure to set aside a decision of the commission on the ground that the commission's decision is not supported by substantial evidence. . . ." (Gov. Code, § 17559, subd. (b).)

■ The Legislature's direction to the Commission to reconsider or set aside its final decisions is an unlawful collateral attack on those decisions. Once a decision of the Commission becomes final and has not been set aside by a court pursuant to a petition for writ of administrative mandamus (Code Civ. Proc., 1094.5), it is not subject to collateral attack. As a collateral attack, the Legislature's direction to the Commission to set aside or reconsider Commission decisions went beyond the power of the Legislature.

■ The Legislature is powerless to overturn a specific judicial decision. (*Mandel v. Myers* (1981) 29 Cal.3d 531, 547 [174 Cal.Rptr. 841, 629 P.2d 935] (*Mandel*).) "Our Constitution assigns the resolution of such specific controversies to the judicial branch of government (Cal. Const., art. VI, § 1) and provides the Legislature with no authority to set itself above the judiciary by discarding the outcome or readjudicating the merits of particular judicial

proceedings." (*Mandel, supra,* at p. 547.) "[T]he fundamental separation of powers doctrine embodied in article III, section 3 of the California Constitution [citation] forbids any such legislative usurpation of traditional judicial authority." (*Mandel, supra,* at p. 547.)

■ Once the Commission's decisions are final, whether after judicial review or without judicial review, they are binding, just as are judicial decisions. An administrative agency's quasi-judicial decision is binding in later civil actions. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65 [99 Cal.Rptr.2d 316, 5 P.3d 874].) "[U]nless a party to a quasi-judicial proceeding challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (*Id.* at pp. 69–70.) Therefore, like a judicial decision, a quasi-judicial decision of the Commission is not subject to the whim of the Legislature. Only the courts can set aside a specific Commission decision and command the Commission to reconsider, and, even then, this can be done only within the bounds of statutory procedure. (Gov. Code, § 17559, subd. (b).)

There is no legally defensible basis for distinguishing between the Legislature's direction to set aside, on one hand, and to reconsider, on the other, a final determination by the Commission. The trial court found that the direction to reconsider was merely procedural and therefore did not overstep the Legislature's bounds. However, the effect of the direction to reconsider was to nullify the finality of specific Commission decisions. Such a case-by-case legislative abrogation of Commission decisions violates the separation of powers doctrine.

The conclusion that the Commission's decisions are beyond the reach of legislative encroachment is supported in *Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521 [234 Cal.Rptr. 795] (*Carmel Valley*). In that case, the state required counties to supply firefighters with protective clothing and equipment. The counties filed a petition for reimbursement with the Board of Control, the Commission's predecessor. The Board of Control found that the clothing and equipment requirement constituted a state mandate and ordered reimbursement. The state did not challenge the decision of the Board of Control by seeking a writ of mandate during the statutory time limit. The Legislature then refused to appropriate funds for reimbursement. (*Id.* at pp. 530–533.)

When the counties sought judicial relief for the failure to provide reimbursement, the state attempted to argue that the decision of the Board of Control was incorrect. The court held, however, that the state could not obtain relief in this manner, even if the decision of the Board of Control was

incorrect, because the state waived the right to challenge the decision and was collaterally estopped from doing so. (*Carmel Valley, supra,* 190 Cal.App.3d at pp. 534–537.)

■ As in *Carmel Valley,* the State, in this case, is not entitled to nullify the finality of the prior Commission decisions, whether by refusing to fund a mandate or directing the Commission to reconsider. The State is bound by those decisions. As noted in *Carmel Valley,* a party to a final adjudication of an administrative agency is collaterally estopped from relitigating the issues if (1) the agency acted in a judicial capacity, (2) it resolved the disputed issues, and (3) all parties had the opportunity to fully and fairly litigate the issues. (*Carmel Valley, supra,* 190 Cal.App.3d at p. 535.) Each of the elements is present in this case. Therefore, the State may not attack the test claim decisions by having the Legislature require the Commission to set aside or reconsider its decisions.

Because the Legislature had no power to direct the Commission to set aside or reconsider its test case decisions, the Commission's actions in response to that direction were unauthorized. The Commission, itself, stated in its new decisions that it was acting to reconsider or set aside the decisions pursuant to the direction of the Legislature.

Therefore, the setting aside and reconsideration of the test claims at issue here (*Open Meetings Act* and *Brown Act Reform* test claims, the *Mandate Reimbursement Process I* test claim, and the *School Accountability Report Cards* test claim) was unauthorized, and we direct the trial court to modify its judgment and the writ of mandate accordingly. The lone exception is the *Mandate Reimbursement Process II* test claim decision, which was heard pursuant to a new test claim and was not a reconsideration of a prior test claim.

Over time, any particular decision of the Commission may be rendered obsolete by changes in the law and material circumstances that originally justified the Commission's decision. While decisions of the Commission are not subject to collateral attack, logic may dictate that they must be subject to some procedure for modification after changes in the law or material circumstances. CSBA argues that the most analogous procedure is the inherent power of a court to modify a continuing injunction to take into account changes in the law and material circumstances. We conclude that we need not decide this question.

In deciding that the Legislature cannot direct, on a case-by-case basis, that a final decision of the Commission be set aside or reconsidered, we do not imply that there is no way to obtain reconsideration of a Commission

decision when the law or material circumstances have changed. We only conclude that the Legislature's attempt to force a reconsideration in this case violated the separation of powers doctrine. Whether the Commission, exercising inherent powers, may agree to reconsider a decision or the Legislature may provide, generally, a process for obtaining reconsideration of a decision is beyond the scope of this opinion.[7]

## II

### *Additional Separation of Powers Argument*

Because we have already determined that the setting aside and reconsideration of all but one of the test claim decisions at issue in this appeal was unauthorized, we need not consider further arguments concerning those test claim decisions. Accordingly, the remaining discussion relates to the *Mandate Reimbursement Process II* test claim.

In finding that the duties imposed by the state did not give rise to reimbursable costs in the *Mandate Reimbursement Process II* test claim decision, the Commission did not decide for itself whether those duties were expressly included in or necessary to implement a ballot measure. Instead, the Commission simply cited the Legislature's declaration in Government Code section 17500 that the Legislature's intent in enacting the statutes was "to provide for the implementation of [Proposition 4]." "Thus," concluded the Commission, "the test claim statutes and executive orders, as part of that statutory scheme, meet the standard of section 17556, subdivision (f), in that they are 'necessary to implement [or] reasonably within the scope of' article XIII B, section 6." (Original brackets.)

The Commission's conclusion that the Legislature's statement of intent resolved the matter was unjustified because legislative declarations concerning whether a state mandate exists are irrelevant to the Commission's determination of whether a state mandate exists. (*County of Los Angeles v. Commission on State Mandates* (1995) 32 Cal.App.4th 805, 818 [38 Cal.Rptr.2d 304] (*County of Los Angeles*).)

In *County of Los Angeles*, the court considered a Penal Code statute imposing duties on local governments and providing for state mandate reimbursement to local governments for implementing the duties. (*County of Los Angeles, supra*, 32 Cal.App.4th at pp. 811–812.) When the state discontinued payments, the county filed a test claim, asserting that the Legislature's

---

[7] The Commission is authorized by statute to reconsider a decision within 30 days, with a possible 30-day extension, after issuing the decision. (Gov. Code, § 17559, subd. (a).) The statutory time to obtain reconsideration is well past.

provision granting state mandate reimbursement was a "final and unchallengeable determination that [the statute] constitute[d] a state mandate." (*Id.* at p. 818.) The *County of Los Angeles* court disagreed. It held that "the Commission, as a quasi-judicial body, has the sole and exclusive authority to adjudicate whether a state mandate exists. Thus, any legislative findings are irrelevant to the issue of whether a state mandate exists, and the Commission properly determined that no state mandate existed." (*Id.* at p. 819.)

Applying the holding in *County of Los Angeles*, we conclude that the Legislature's declarations concerning its intent in enacting the state mandate reimbursement provisions are simply irrelevant to the determination of whether a state mandate exists. We discern no conflict between this conclusion and article III, section 3.5 of the Constitution, stating that an administrative agency has no power to declare a statute unconstitutional or to refuse to enforce it on that basis. A legislative finding that a mandate exists is irrelevant to the Commission's determination and, therefore, it is unnecessary to determine whether the finding conflicts with the Constitution. (*County of Los Angeles, supra*, 32 Cal.App.4th at p. 819.) On remand, the Commission must disregard any declarations of legislative intent and, instead, decide for itself whether a reimbursable state mandate exists.

### III

*Alternative Basis for Rejecting Claim*

In reconsidering the *School Accountability Report Cards* test claim, after it was directed to do so by the Legislature, the Commission determined that the application of the amended version of Government Code section 17556, subdivision (f) resulted in a finding that there were no reimbursable costs. The Commission then continued: "Even in the absence of Government Code section 17556, subdivision (f), there is a separate and independent ground for finding that the test claim legislation does not impose costs mandated by the state." The Commission then found that (1) the additional school accountability report card elements added by the Legislature required only a minimal reallocation of resources and (2) the state essentially funds the school accountability report cards through Proposition 98's mandatory funding.

In its separate appeal, the Commission asserts that, even if we determine that the statutes that required reconsideration are unconstitutional, we should reverse the trial court's judgment as to the *School Accountability Report Cards* test claim because the trial court did not consider the alternative grounds that the Commission gave for its finding that there were no reimbursable costs. CSBA argues that we should disregard this assertion because it was not raised in the trial court. CSBA also argues that the alternative

grounds cited by the Commission are not valid bases for upholding the Commission's decision because the Commission acted only pursuant to the Legislature's invalid direction to reconsider the test claim decision. We conclude that the alternative grounds cited by the Commission have no bearing on the outcome because the Legislature's direction to the Commission to reconsider the *School Accountability Report Cards* test claim decision exceeded the Legislature's power.

The Commission agrees that the issue of whether the alternative grounds were sufficient to uphold the decision on reconsideration is moot if we find that the Legislature exceeded its power in directing reconsideration of the *School Accountability Report Cards* test claim decision. The Commission states: "[I]f the appellate court finds that the reconsideration statutes are constitutionally invalid, as argued in CSBA's cross appeal [citation], the Commission's reconsideration decision must be set aside, the alternative grounds issue is moot, and no further analysis is required." We agree. The reconsideration statutes were invalid. Therefore, the Commission's reconsideration based on those statutes must be nullified, regardless of the decision's merits.[8]

IV

*Costs Expressly Included in Ballot Measures*

In its cross-appeal, CSBA contends that ballot measure mandates imposed on local governments must be reimbursed under article XIII B, section 6. It argues that the provision in the original version of Government Code section 17556, subdivision (f), that the state need not reimburse costs resulting from "duties which were expressly included in a ballot measure approved by the voters in a statewide election" (Stats. 1984, ch. 1459, § 1, pp. 5113, 5119, enacting Gov. Code, former § 17556, subd. (a)(6)), was in conflict with article XIII B, section 6. We turn first to this contention. As did the trial court, we conclude that CSBA's contention is without merit, based on the plain

---

[8] The Commission requests that we take judicial notice that CSBA, ELA, and the Sweetwater Union High School District jointly filed a petition for writ of mandate and complaint for injunctive and declaratory relief against the State on October 19, 2007, challenging, among other things, the alternative grounds relied on by the Commission in the *School Accountability Report Cards* test claim. The request for judicial notice is denied because the newly filed petition and complaint are not of substantial consequence to the determination of this action. (Evid. Code, §§ 452, subd. (d), 459.)

CSBA filed a request to submit supplemental briefing on the merits of the alternative grounds stated in the Commission's decision in the *School Accountability Report Cards* test claim. Because we do not reach the merits of the alternative grounds, we deny CSBA's request for supplemental briefing.

meaning of article XIII B, section 6. The state's constitutional duty to reimburse local governments for mandated costs does not include ballot measure mandates.

### A. *Constitutional Challenge to Legislative Enactment*

██ "In deciding whether the Legislature has exceeded its power, we are guided 'by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, "we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited." [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used." ' [Citations.] On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." ' [Citation.]" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284–285 [132 Cal.Rptr.2d 713, 66 P.3d 718].)

### B. *Plain Meaning of the Constitutional Provision*

██ Article XIII B, section 6 requires the state to reimburse the local government "[w]henever the Legislature or any state agency mandates a new program or higher level of service . . . ." Although the text refers to mandates by "the Legislature or any state agency," which does not appear to include ballot measures passed by voters, CSBA claims that "Legislature" is ambiguous and can include the voters. It further claims that by turning to Proposition 4's history and ballot arguments, the ambiguity must be resolved in favor of including the voters in the meaning of "Legislature." We reject this argument because "Legislature" is not ambiguous.

██ When interpreting the Constitution, we must choose the plain meaning of the provision if the language is clear and unambiguous. If the language is ambiguous, however, we turn to extrinsic evidence, such as ballot arguments. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444–445 [79 Cal.Rptr.3d 312, 187 P.3d 37].)

■ "Legislature" is not ambiguous in the context of reimbursement for state mandates: "The legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum." (Cal. Const., art. IV, § 1.) Although the "legislative power" is shared by the Legislature and the people, the two sources of legislation are distinct. If they were not distinct, it would have been unnecessary for the people to "reserve to themselves the powers of initiative and referendum." (*Ibid.*)

■ Article XIII B, section 6 requires reimbursement for mandates imposed by the "Legislature" and not by ballot measures. If the voters had intended to include ballot measure mandates—that is, mandates imposed by the voters themselves—they could have done so by using (1) more general but inclusive language, such as providing that reimbursement is required whenever "the state" mandates a new program or higher level of service and (2) additional specific language, such as providing that reimbursement is required whenever "a ballot measure" mandates a new program or higher level of service. The voters did neither. Therefore, we must not read into the language of Proposition 4 an interpretation that goes beyond the plain meaning of the provision.

## C. *Introducing Ambiguity*

But CSBA attempts to introduce ambiguity by referring to cases holding that an extension or limitation on the power of the "Legislature" in some contexts in the state Constitution includes an extension of or limitation on the people's power of initiative. (See *Legislature v. Deukmejian* (1983) 34 Cal.3d 658 [194 Cal.Rptr. 781, 669 P.2d 17]; *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245 [279 Cal.Rptr. 325, 806 P.2d 1360]; *Independent Energy Producers Assn. v. McPherson* (2006) 38 Cal.4th 1020 [44 Cal.Rptr.3d 644, 136 P.3d 178].) This attempt to introduce ambiguity fails because the cases upon which CSBA relies are distinguishable.

### 1. *Legislature v. Deukmejian*

In *Legislature v. Deukmejian*, the Supreme Court considered the validity of a proposed initiative that would have realigned voting districts. At the time *Legislature v. Deukmejian* was decided, article XXI, section 1 of the California Constitution stated: "In the year following the year in which the national census is taken under the direction of Congress at the beginning of each decade, the Legislature shall adjust the boundary lines of the . . . congressional . . . districts . . . ." (Cal. Const., art. XXI, former § 1.) The proposed initiative sought to realign the districts even though the Legislature had already acted pursuant to its decennial duty. (*Legislature v. Deukmejian, supra,*

34 Cal.3d at p. 663.) The specific issue resolved by the Supreme Court was whether it should "create an exception to the constitutionally mandated and long-established rule that redistricting may occur only once within the 10-year period following a federal census." (*Ibid.*) Assuming, without deciding, that the people have the authority to realign districts through the initiative process (*id.* at p. 673), the court concluded that, "based upon the principle that in the enactment of statutes the constitutional limitations that bind the Legislature apply with equal force to the people's reserved power of initiative, that such an exception cannot be justified" (*id.* at p. 663).

Contrary to CSBA's argument, *Legislature v. Deukmejian* does not lead to the conclusion that the term "Legislature" in the Constitution applies equally to what we normally refer to as the Legislature and to the voters acting pursuant to the power of initiative and referendum. The Supreme Court specifically declined to decide whether "redistricting by initiative is permissible." (*Legislature v. Deukmejian, supra,* 34 Cal.3d at p. 673.) Instead, it held that, even if it is permissible, the limitations imposed by the Constitution apply to redistricting by initiative. (34 Cal.3d at pp. 673–674.)

This holding does not support CSBA's argument that the term "Legislature" in article XIII B, section 6 includes the voters. The Constitution narrowly granted the Legislature the power to realign districts. Even if the people have the power to exercise the initiative power to realign districts, which power is not specifically granted to the people by the Constitution, such power must be limited, as is the Legislature's power. This holding did not blur the definition of "Legislature." It simply refused to grant the people power in excess of the Legislature's as to redistricting.

### 2. *Kennedy Wholesale, Inc. v. State Bd. of Equalization*

In *Kennedy Wholesale, Inc. v. State Bd. of Equalization,* the Supreme Court addressed the issue of whether Proposition 13 impliedly repealed the people's power to raise taxes by initiative. Proposition 13 provided, in part, that "any changes in State taxes enacted for the purpose of increasing revenues . . . must be imposed by an Act passed by not less than two-thirds of all members elected to each of the two houses of the Legislature . . . ." Noting that the provision referred to the Legislature but not to the people's power of initiative, thereby supporting at least an inference that the people do not have the power to raise taxes, the court found the provision ambiguous because it conflicts with article IV, section 1 of the Constitution, which reserves to the people the power of initiative. Based on this contextual ambiguity, the court referred to extrinsic evidence and found there was nothing to support an argument that Proposition 13 impliedly repealed the people's power to raise taxes. (*Kennedy Wholesale, Inc. v. State Bd. of Equalization, supra,* 53 Cal.3d at pp. 248–251.)

CSBA claims that the *Kennedy Wholesale, Inc. v. State Bd. of Equalization* court "held that the reference to 'the Legislature' in [Proposition 13] refers both to the Legislature and to the People acting by initiative." We read the case differently. The court held that the two-thirds majority limitation on the Legislature's power to raise taxes *did not* implicate the people's power to raise taxes by initiative with a simple majority vote. (*Kennedy Wholesale, Inc. v. State Bd. of Equalization, supra*, 53 Cal.3d at p. 251.) In that way, the case makes it clear that the Legislature's lawmaking power and the people's power of initiative are separate and distinct.

### 3. *Independent Energy Producers Assn. v. McPherson*

In *Independent Energy Producers Assn. v. McPherson, supra*, 38 Cal.4th 1020, the Supreme Court held that "language in the California Constitution recognizing the authority of the Legislature to take specified action generally is interpreted to encompass the exercise of such legislative power either by the Legislature or by the people through the initiative process." (*Id.* at p. 1025.) From this, CSBA claims that when the Constitution says "Legislature" it also means the voters, or, at least, it is ambiguous. We disagree.

The Supreme Court, in *Independent Energy Producers Assn. v. McPherson*, considered the constitutionality of a proposed ballot initiative to confer additional regulatory authority on the California Public Utilities Commission. The Court of Appeal had determined that the proposed provision was unconstitutional, based on the language of article XII, section 5 of the Constitution, which states: " 'The Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the commission . . . .' " (*Independent Energy Producers Assn. v. McPherson, supra*, 38 Cal.4th at pp. 1031–1032.)

The Supreme Court concluded that this provision does not prevent the people from acting pursuant to the power of initiative also to confer additional authority on the Public Utilities Commission. Although the language of article XII, section 5 of the Constitution gives the Legislature plenary power to confer additional authority on the commission, it is silent, and therefore ambiguous, concerning the power of the people also to confer additional authority on the commission. Having found this ambiguity, the court stated: "[I]n view of the long-standing California decisions establishing that references in the California Constitution to the authority of the Legislature to enact specified legislation generally are interpreted to include the people's reserved right to legislate through the initiative power, and in light of the background and purpose of the relevant language of article XII, section 5, we conclude that this constitutional provision does not preclude the people,

through their exercise of the initiative process, from conferring additional powers or authority upon the [Public Utilities Commission]." (*Independent Energy Producers Assn. v. McPherson, supra*, 38 Cal.4th at pp. 1043–1044, fn. omitted.)

This holding that the lawmaking power given to the Legislature is generally interpreted to include the same authority given to the people acting pursuant to the power of initiative does not support the assertion that the use of the word "Legislature" in article XIII B, section 6 includes ballot measures. This is so because the Constitution can (and does) limit the Legislature's power in ways that the people's power of initiative is not limited, such as requiring the Legislature to raise taxes only on a two-thirds majority vote. Accordingly, the holding in *Independent Energy Producers Assn. v. McPherson* does not lead logically or rationally to the conclusion that the use of the term "Legislature" in article XIII B, section 6, really means "Legislature or voters."

### 4. *No Contextual Ambiguity*

Citing these three cases—*Legislature v. Deukmejian*; *Kennedy Wholesale, Inc. v. State Bd. of Equalization*; and *Independent Energy Producers Assn. v. McPherson*—CSBA contends that "the People's lawmaking powers are identical to the Legislature's and subject to the same limitations." We are unconvinced that the Supreme Court's holdings in these cases create ambiguity in the use of the term "Legislature" in article XIII B, section 6. As we noted above, article IV, section 1 of the California Constitution identifies the "Legislature" as the Senate and Assembly. Although in the cases cited by CSBA, the people's power of initiative, for reasons specifically associated with each of the constitutional provisions considered, has been found, to some extent, to be limited or extended in the same way that the Constitution limited or extended the Legislature's power, CSBA gives no reason, and we know of none, to go beyond the plain meaning of Proposition 4, referring to mandates imposed by "the Legislature or any state agency" in determining the meaning of the provision. "Legislature" does not include the people acting pursuant to the power of initiative. We therefore reject CSBA's assertion that article XIII B, section 6, requiring reimbursement to local governments for certain state mandates, applies to ballot measures.

### V

### *Costs Necessary to Implement and Reasonably Within the Scope of Ballot Measures*

 Having established that costs imposed on local governments by ballot measure mandates need not be reimbursed by the state, we turn to

whether the further limiting of reimbursable costs in Assembly Bill No. 138 (2005–2006 Reg. Sess.) violates article XIII B, section 6. We conclude that, to the extent that Government Code section 17556, subdivision (f), as amended by Assembly Bill No. 138, declares that no reimbursement is necessary for costs resulting from "duties that are necessary to implement . . . a ballot measure," the amendment does not violate article XIII B, section 6. However, the additional language declaring that no reimbursement is necessary for "duties that are . . . reasonably within the scope of . . . a ballot measure" is impermissibly broad because it allows for denial of reimbursement when reimbursement is required by article XIII B, section 6.

### A. Government Code Section 17556, Subdivision (f), as Amended

We first consider the language of the statute to determine the scope of the issue raised by the parties. As amended by Assembly Bill No. 138 (2005–2006 Reg. Sess.), subdivision (f) of Government Code section 17556 included three categories of duties imposed on local governments for which the state need not provide reimbursement. The first and narrowest category, also found in the version of the statute before the amendment, includes duties that are "expressly included in" a ballot measure. The second category includes duties that are "necessary to implement" a ballot measure. And the third and broadest category includes duties that are "reasonably within the scope of" a ballot measure. Every duty that is "expressly included in" a ballot measure is also "necessary to implement" and "reasonably within the scope of" that ballot measure. Also, every duty that is "necessary to implement" a ballot measure is "reasonably within the scope of" that ballot measure. But not every duty that is "reasonably within the scope of" a ballot measure is "expressly included in" or "necessary to implement" that ballot measure.

We note that, although the State defends the "necessary to implement" language of Government Code section 17556, subdivision (f), it does not similarly defend the "reasonably within the scope of" language. The State asserts that the "necessary to implement" language is consistent with article XIII B, section 6 and is severable from the "reasonably within the scope of" language. As will be seen, we agree with both the implicit concession that the "reasonably within the scope of" language is indefensibly broad when measured against the constitutional provision and the express argument that the "necessary to implement" language is consistent with the constitutional provision and is severable from the "reasonably within the scope of" language.

### B. San Diego Unified School Dist. v. Commission on State Mandates

Before we consider the arguments, we summarize the most recent decision from the California Supreme Court relevant to these arguments—*San Diego*

*Unified School Dist. v. Commission on State Mandates* (2004) 33 Cal.4th 859 [16 Cal.Rptr.3d 466, 94 P.3d 589] (*San Diego Unified*). In that case, the Supreme Court specified what costs associated with expulsion of a student from a public school were reimbursable as state mandates. The court determined that although some costs were reimbursable as state mandates, others were not because they were incidental to federal mandates and were de minimis.[9] (33 Cal.4th at pp. 889–890.)

The *San Diego Unified* court observed that federal due process requires certain procedural safeguards when a public school is considering expelling a student. Provisions of the Education Code in effect at the time relevant to the *San Diego Unified* decision mandated procedures complying with the federal due process requirements. The Education Code provisions also mandated procedures not required by federal due process, thus producing costs that were not federally mandated. The claimant recognized that it was not entitled to state reimbursement for costs that were federally mandated, but asserted a claim for those costs that resulted from state mandates that exceeded the federal due process requirements. (*San Diego Unified, supra,* 33 Cal.4th at p. 885.)

The *San Diego Unified* court considered the claim in the context of two scenarios: mandatory and discretionary expulsion.

First, the court considered a provision requiring a principal to recommend to the school board that a public school student be expelled if the student possessed a firearm. Because neither federal due process nor, at the time, any federal law required this recommendation of expulsion, the costs were reimbursable as a state mandate. The court reasoned that, although federal due process only required the school district to expend resources if the school district decided to pursue expulsion, the state law required it to do so. Thus, it was a reimbursable state mandate. (*San Diego Unified, supra,* 33 Cal.4th at pp. 881–883.)

Second, the *San Diego Unified* court considered the scenario in which the school district pursued expulsion under circumstances not required by state law. The court determined that no reimbursable costs resulted under these circumstances because, although the state law imposed requirements exceeding the requirements of federal due process, the additional state requirements were incidental to the federal requirements and imposed additional costs that

---

[9] Government Code former section 17556, subdivision (c) stated that costs are not reimbursable if "[t]he statute or executive order implemented a federal law or regulation and resulted in costs mandated by the federal government, unless the statute or executive order mandates costs which exceed the mandate in that federal law or regulation." (Stats. 1989, ch. 589, § 1, p. 1973.)

were de minimis. The court held that, "for purposes of ruling upon a request for reimbursement, challenged state rules or procedures that are intended to implement an applicable federal law—and whose costs are, in context, de minimis—should be treated as part and parcel of the underlying federal mandate." (*San Diego Unified, supra,* 33 Cal.4th at p. 890.)

### C. *Constitutionality of Statutory Language*

#### 1. *Necessary to Implement*

The language of subdivision (f) of Government Code section 17556 relieving the state of the obligation to reimburse a local government for duties "necessary to implement" a ballot measure is unobjectionable because it corresponds to the Supreme Court's holding in *San Diego Unified* that state statutes codifying federal mandates are not reimbursable because they are part and parcel of the federal mandate. Therefore, contrary to the decision of the trial court, we conclude that the "necessary to implement" language of the subdivision is not inconsistent with article XIII B, section 6.

In *San Diego Unified*, some of the Education Code provisions concerning expulsions were viewed as codifying federal due process requirements. (*San Diego Unified, supra,* 33 Cal.4th at p. 868.) The court held that the Education Code provisions "adopted to implement a federal due process mandate" produce costs that are "nonreimbursable under article XIII B, section 6 . . . ." (*San Diego Unified, supra,* at p. 888.) By the same reasoning, statutes that are adopted to implement ballot measure mandates produce costs that are nonreimbursable. Thus, the "necessary to implement" language of Government Code section 17556, subdivision (f) is consistent with article XIII B, section 6 because it denies reimbursement only to the extent that costs imposed by a statute are necessary to implement the ballot measure. (See *County of Riverside v. Superior Court, supra,* 30 Cal.4th at pp. 284–285 [holding that Legislature has power to legislate limited only by Constitution].) Therefore, the "necessary to implement" language of Government Code section 17556, subdivision (f) does not violate article XIII B, section 6.

But CSBA objects to this application of the *San Diego Unified* holding. It asserts that we cannot import the analysis from *San Diego Unified* to this case because (1) the provisions concerning federal mandates and ballot measure mandates in Government Code section 17556, subdivisions (c) and (f) are worded differently and (2) federal mandates and ballot measure mandates are not treated the same in the spending limit provisions of Proposition 4, found at article XIII B, section 9 of the Constitution. Neither argument has merit.

As CSBA observes, the two subdivisions of Government Code section 17556 concerning federal mandates and ballot measure mandates feature

different wording. Subdivision (c) of section 17556 provides that costs are nonreimbursable if "[t]he statute or executive order imposes a requirement that is mandated by a federal law or regulation and results in costs mandated by the federal government, unless the statute or executive order mandates costs that exceed the mandate in that federal law or regulation." Subdivision (f) of section 17556 approaches the same issue from a different angle, stating that costs are nonreimbursable if "[t]he statute or executive order imposes duties that are necessary to implement, reasonably within the scope of, or expressly included in, a ballot measure approved by the voters in a statewide or local election."

The difference in wording is that subdivision (c) refers to "impos[ing] a requirement that is mandated by federal law," while subdivision (f) refers to "impos[ing] duties that are necessary to implement . . . a ballot measure." (Gov. Code, § 17556.) Although the wording is different, there is no difference in the effect when considering the interpretation placed on subdivision (c) by the *San Diego Unified* court. There, the court stated that statutes "adopted to implement" federal law are nonreimbursable. Subdivision (f) is even more restrictive, stating that there is no reimbursement obligation if the statute is "necessary to implement" a ballot measure. Therefore, the difference in wording does not support an argument that the "necessary to implement" language of Government Code section 17556, subdivision (f) violates article XIII B, section 6.

 Proposition 4 limited the spending authority of state and local governments. (*Department of Finance v. Commission on State Mandates* (2003) 30 Cal.4th 727, 735 [134 Cal.Rptr.2d 237, 68 P.3d 1203].) Not included in that spending limitation, however, is spending required to comply with a federal mandate. (Cal. Const., art. XIII B, § 9, subd. (b).) There is no similar exception for spending required to comply with ballot measure mandates. Citing this difference, CSBA argues that relieving the state of its reimbursement obligation for ballot measure mandates is unjustified. This argument fails because it is, at its core, a policy argument. It posits that the Legislature should not be able to impose nonreimbursable costs if the costs are not excepted from the constitutional spending limits. Nonetheless, that is the Legislature's prerogative, as long as it does not violate the Constitution. "The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function." (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

 CSBA's objections to the application of the *San Diego Unified* decision to the interpretation of Government Code section 17556,

subdivision (f) are without merit. We therefore conclude that, to the extent that Government Code section 17556, subdivision (f) allows the Legislature to impose on local governments nonreimbursable costs resulting from duties that are "necessary to implement" or "expressly included in" a ballot measure, it does not violate article XIII B, section 6.

### 2. *Reasonably Within the Scope Of*

■■■ As we noted above, the State makes no attempt to defend the "reasonably within the scope of" language of Government Code section 17556, subdivision (f). And for good reason. That language is so broad that it cannot be used as a standard for determining whether the state must reimburse the local government for having imposed a duty resulting in costs. Determining whether such a duty is reasonably within the scope of a ballot measure lends itself to sweeping imposition of duties on local governments without reimbursement, contrary to the intent of Proposition 4. The State offers no interpretation of the language that would properly limit the language to be consistent with Proposition 4.

One example suffices to show that the "reasonably within the scope of" language is overly broad. As we discussed with respect to the *Open Meetings Act* and *Brown Act Reform* test claims, the Commission had decided that the costs imposed on local governments under these acts constituted reimbursable state mandates. Then, in 2004, the voters passed Proposition 59, generally stating that the people have the right to governmental transparency. (Cal. Const., art. I, § 3, subd. (b)(1).) Any statute that has anything to do with open government is "reasonably within the scope of" Proposition 59. However, it is unlikely that the voters intended to grant carte blanche to the Legislature to impose unlimited, unreimbursable costs on local governments for all duties associated with open government. Because the phrase "reasonably within the scope of" so clearly contravenes the intent of the voters in passing Proposition 4, that language must be limited.

In light of the remaining language of the subdivision, relieving the state of the obligation to reimburse local governments if the duty is "expressly included in" or "necessary to implement" a ballot measure, which phrases are much more limited than "reasonably within the scope of," the best course—the course that is consistent with Proposition 4—is to interpret "reasonably within the scope of" to extend only to duties that are "expressly included in" or "necessary to implement" ballot measures. This may be seen as a limiting

of the language to what is constitutionally permissible or as a severance of the "reasonably within the scope of" language from the subdivision. Either way, it limits the expansive language in a workable and constitutionally permissible solution.

 If this limiting of the phrase "reasonably within the scope of" amounts to a severance of that language from the statute, we consider such severance justified and proper.[10] "[A] statute that is invalid as inconsistent with the California Constitution is not ineffective and inoperative to the extent that its invalid parts can be severed from any valid ones. [Citation.] An invalid part can be severed if, and only if, it is 'grammatically, functionally and volitionally separable.' [Citation.] It is 'grammatically' separable if it is 'distinct' and 'separate' and, hence, 'can be removed as a whole without affecting the wording of any' of the measure's 'other provisions.' [Citation.] It is 'functionally' separable if it is not necessary to the measure's operation and purpose. [Citation.] And it is 'volitionally' separable if it was not of critical importance to the measure's enactment. [Citation.]" (*Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613 [88 Cal.Rptr.2d 56, 981 P.2d 990].)

 "Reasonably within the scope of" is grammatically, functionally and volitionally separable from the remainder of Government Code section 17556, subdivision (f). Grammatically, it can be taken out without harming the meaning of any other part of the subdivision. Functionally, it is not necessary to the overall operation and purpose of the subdivision, which still defines the limits of the state's obligation to reimburse local governments. And volitionally, the severance does not affect the Legislature's apparent purpose to limit, to the extent allowed by the Constitution, its obligation to reimburse local governments. "Reasonably within the scope of," therefore, can and must be severed from the remaining language in Government Code section 17556, subdivision (f).

### 3. *Incidental and de Minimis*

 We also conclude that statutes imposing duties on local governments do not give rise to reimbursable costs if the duties are incidental to the ballot measure mandate and produce at most de minimis added costs. (*San Diego Unified, supra,* 33 Cal.4th at p. 889.)

---

[10] CSBA argues that we should not consider the severability of the "reasonably within the scope of" language because severability was not raised by the State in its trial court arguments. We decline to take such a myopic course. The issue to be resolved is the proper interpretation of Government Code section 17556, subdivision (f) within constitutional restraints. That general issue was argued in the trial court, and it would serve no valid purpose to ignore the application of severability to that issue.

In *San Diego Unified*, the court considered whether costs resulting from statutes that were not adopted to implement federal due process requirements were reimbursable under article XIII B, section 6, and Government Code section 17556, subdivision (c). The court determined that "the Legislature, in adopting specific statutory procedures to comply with the general federal mandate, reasonably articulated various incidental procedural protections." (*San Diego Unified, supra*, 33 Cal.4th at p. 889.) It also determined that the statutes, "viewed singly or cumulatively, . . . did not significantly increase the cost of compliance with the federal mandate." (*Ibid.*) The court concluded that, "for purposes of ruling upon a request for reimbursement, challenged state rules or procedures that are intended to implement an applicable federal law—and whose costs are, in context, de minimis—should be treated as part and parcel of the underlying federal mandate." (*Id.* at p. 890.)

There is no reason not to apply this practical holding similarly to ballot measure mandates. Thus, the Commission must consider the holding of *San Diego Unified* in determining whether costs are reimbursable for ballot measure mandates.

### D. *Remand*

We are not in a position to determine whether, under our interpretation of Government Code section 17556, subdivision (f), the state is obligated to provide reimbursement with respect to the *Mandate Reimbursement Process II* test claim. Because there was no case interpreting the subdivision, the Commission was required to apply it, as written. Therefore, the Commission must have the opportunity to resolve the question first. (See *County of Los Angeles v. Commission on State Mandates* (2007) 150 Cal.App.4th 898, 920 [58 Cal.Rptr.3d 762] [Commission resolves mandate questions first].)

 In the *Mandate Reimbursement Process II* test claim decision, the Commission noted that it had no authority to refuse to apply Government Code section 17556, subdivision (f), even if the subdivision was inconsistent with the Constitution. Now that we have held that the subdivision is, in part, inconsistent with article XIII B, section 6, and must be interpreted to eliminate that inconsistency, the Commission can apply the subdivision properly.[11]

---

[11] Assembly Bill No. 138 (2005–2006 Reg. Sess.) also inserted the following language into Government Code section 17556, subdivision (f): "This subdivision applies regardless of whether the statute or executive order was enacted or adopted before or after the date on which the ballot measure was approved by the voters." (Stats. 2005, ch. 72, § 7.) There is no reason, in this case, to opine concerning the validity of this provision.

## DISPOSITION

The judgment is reversed in part and affirmed in part. The trial court is directed to modify the judgment consistent with this opinion and to modify its writ of mandate to direct the Commission to set aside the decisions challenged in this action with respect to the *Open Meetings Act* and *Brown Act Reform* test claims, the *Mandate Reimbursement Process I* test claim, and the *School Accountability Report Cards* test claim and to reinstate the prior decisions. The writ must also be modified to direct the Commission to reconsider the *Mandate Reimbursement Process II* test claim in a manner consistent with this opinion. Each party shall bear its own costs on appeal.

Robie, J., and Cantil-Sakauye, J., concurred.